will take a break after after this case. Good morning, may it please the court, I'm Neal Vandalsen, I'm here for the defendant Cohen Randolph v. Chavez. This is a case that arises out of a prosecution for distribution, two counts of distribution of methamphetamine, and the critical dispute was just that, whether or not Mr. Chavez distributed methamphetamine. A key part of the evidence that the government presented in the case came from recordings of a wire that was worn by a confidential informant, and the way that that information was transmitted to the jury becomes a key part of the issues in this appeal, along with the jury instruction that was given for the court to consider that evidence. I've been practicing law for 24 years, I think this is the first time I've really had a best evidence issue, and I got to thinking about why is it that this is a rule that it applies constantly? I mean, it is constantly an issue, and it's important, but it gets overlooked, and the Because when you take a piece of evidence such as a recording, and you convert that into a different format, there are opportunities for information to be lost, and information to be added. Well, the only one thing that's lost is you don't understand what the words mean, but trial counsel for the defendant stipulated to the accuracy of the translation, so that's not an issue, is it? Well, I believe what was an issue was the accuracy, what is not an issue is the accuracy of the words. Right. Are we translating the meaning of the Spanish words to the meaning of the English words? But you didn't, did you stipulate that the transcript captured everything that was on the recordings? No. Okay. That was not, that was not the stipulation, and in fact, in the same breath that the counsel says, I speak Spanish, my quibble is not with these words being put into these English words, he also said that I am going to be objecting to the introduction of these transcripts under the best evidence rule. Okay. Do you agree that the judge could exclude the original under 403 because it's not relevant, it's not going to be helpful, it could confuse the jury, and so on? I do not think that that is, would be within the court's discretion. Really? Why not? Because there is so much information that is pertinent when, in this context, and there are so many examples in the case law of the proper way to handle this kind of evidence. And if you adopt a rule that allows the district court to, in a situation where people speak a foreign language, just eliminate all the information that's contained in the recording. You're creating two different rules for two different people speaking two different languages. It's got really no reason to exist. You make some respectable arguments in your brief about, you know, identifying the speakers and things like that. Not a word about that at trial, though. He argued best evidence rule. He didn't explain why the original was relevant in any way, why it should not be excluded. Because there was no argument made, as I understand it, correct me if I'm missing something in the record, there was no argument. We need the original because even though the translation is correct, it's important to know who's saying it. You might have had another argument in your brief, I can't remember, but those arguments were not made at trial, were they? I believe that those arguments are embedded in the concept of the best evidence rule. But we're talking now about relevance. Why was the original relevant? And the judge didn't allow in the original, and that was a perfectly sound decision based on the arguments made to the judge. There was no question about the translation being accurate. And that was the only thing that seemed to be at issue to the judge. I think that you have to go back and look at actually what happened in the trial. And there was not a proffer of the recording. That's what's kind of weird about the way that this evidentiary issue developed at trial, is it's not a situation where there was a proffer of, where the government proffered the recording, that never happened. There was never a ruling, well, the recording's not relevant because the recording itself was not proffered. Yeah, what, as I understand it, tell me if I'm misconstruing what happened, the prosecution offered the translation, the translated transcript. There was no real objection to anything in the transcript. It was a best evidence argument that the original also needed to be presented without any argument about why that having the original recording would help the jury. It was just a plain old, straightforward, no frills, best evidence rule argument, right? The objection was to the admission of the transcript. It was that can't be given to the jury unless they have the best evidence, which then shifted the- What about rule 702? Why wasn't that admissible under 702? Because it's not the best evidence. Not 1102, 702. The expert- Expert testimony. Yeah. This is an expert, it's interesting that the 1002, if you look at the advisory committee notes the proposed rules, it says, it should be noted, however, that rule 703, SUPRA, the expert testimony rule, allows an expert to give an opinion based on matters not in evidence, and the present rule must be read as being limited accordingly in its application. Gives an example, x-ray reports, where you don't need to have the original if you're just, because there's no need that the basis of the expert's opinion be admissible into evidence. The- So why wasn't it not admissible under, I said 702, I should have said 703. 703. All that an expert can contribute to that is converting the Spanish to English. Right. There's a lot more information in there that deals with who is speaking. Can this be understood? That's not a subject of an expert. Whether the transcript comprehensively captured what was in the recording. Correct. And there wasn't any expert presented anyway by the government, right? Correct. And on the question of, did the defense lawyer ever have access to the recordings? Not that I'm aware of, and I have tried to investigate that. Did the district court, as far as you know, ever listen to the recordings? There's no indication whatsoever on the record that that happened. Are you saying that defense counsel below did not have the recording? Let me back up. I overstated that case. I have tried to communicate with defense counsel and been unsuccessful. So the truth of it is, is I'm not in a position to say what he knew or what he did not know. But can you say that there's nothing in the record that indicates that he had it? There's nothing in the record to indicate that he did. I thought that he didn't. I thought that government, that there was something in here that says the government gave it to him prior to trial. I would defer to my colleague on that, who is the trial attorney for the government. Was there any requests for the recording? Not that I'm aware of. Not in any documentation that I've been able to see. From the record, it appears that what was provided is this translation transcript. And the agreement was, I agree that these words match these words. I speak Spanish. I speak English. Where there's Spanish over here, it matches the English over here. Beyond that though, there was an objection to that being used as a substitute for a transcript that was never played to the jury or the court. There were, I'm sorry. Is this harmless error in any event, given the fact that the confidential informant, Salas, testified at trial, and testified that he listened to the audio and read the transcript and they were correct, and he was the one that was speaking? No, because one, the jury is entitled to evaluate the evidence in the case. That's what they are there for. There are, in the ordinary course of events, there are so many sub-facts, you could call them, that are decided by a jury just by listening and hearing witnesses and recordings and reviewing documents. The jury had the right to make those determinations and it didn't get the chance. But what happened at trial was, you had testimony of the participants, the informant testified, an officer who recognized the voice of the defendant testified that was his voice. There was plenty of evidence of that. The question was, here we have a tape that the jurors cannot understand. They might be able to get some information out of listening to the tape about voices, but there was no argument made to that effect. I mean, you make some arguments on appeal about why the original would have been to the judge, why you felt that way at that time, because that argument wasn't made. And there was plenty of evidence regarding, this is this person talking, this person talking. The only thing you needed is to know what was being said. That was the only issue that was really controverted at the trial. And here you have a translation of that conversation, which the defense attorney stipulates to be an accurate rendition of the Spanish and the English. So what's the judge supposed to do? Play a tape for the jury that they can't understand, and that the defendant has not explained any reason why that would be helpful. If it had, maybe the judge would have played it. I would say two things. One, going back to the decision by the judge and what was argued. The best evidence rule on its face says that we should give the raw data to the jury. I believe that when trial counsel makes the objection under the best evidence rule, that preserves those issues. And in the heat of battle at trial, sometimes people don't get to make lengthy, brief-like arguments. And in the heat of battle at trial, judges are supposed to read the minds of the attorneys and do what, and come up with the best argument they would have made. That cuts both ways. You're right. It's hard to be a trial attorney. It is. It really is. And it's also really hard. Yes, I know I couldn't be a trial judge. Maybe I can't be an appellate judge either, but being a trial judge is really tough. And we have to go with the attorneys helping the judges as much as possible. And from everything I can see that was presented to the judge, the judge would say, no, there's no purpose in having the original recording played for the jury. It doesn't do anything except confuse them. Go ahead. Let me ask you this. Is that, was that the only alternative? I mean, I thought, my recollection from looking at the case law was there are some courts that have handled this by accepting the recordings. They didn't play them for the jury, but they were available to the jury. And therefore, if the jury wanted to consult the recordings, they could consult them. And so you didn't have to have the prospect of a juror who didn't speak Spanish sitting in a courtroom listening for this period of time to somebody speaking a language they didn't understand. Isn't that right? I mean, isn't there, it's not a binary choice between admit, not admit, right? Right, well, there were other ways to handle it. You could have given it to the jury. You could have played it in the courtroom. You could have said, you know, we haven't even gotten to the instruction issue, but the instruction issue, which is a standard instruction, presumes that we're going to follow the best evidence rule. We're going to give the jury a transcript and a recording and tell them it's up to you to consider this evidence. That's why you're here. But that's not the instruction we got here. That's not what we got here. And the instruction that is in the pattern instruction was impossible here because the rule of evidence was not followed. And the rule of evidence just says what it says. The best evidence rule, it's very simple. It says that if you're going to prove the contents of a recording, you give the jury the recording. Not if the original is destroyed or lost. What about if it's inadmissible because it's irrelevant or at least the relevance is outweighed by the danger of confusion and so on. That's not in the actual language, specific language of the rule as written. But that certainly comports with the history of the best evidence rule. We don't require the original if there's some reason why we can't do it. And one reason could be the original is just too confusing. I think that evidence can be helpful to the jury. I think all the cases that I've cited where this procedure has been followed up either, as Judge Holmes suggests, you could just give it to the jury and let them consider it or playing it, shows that there's some help there. You've acknowledged in my brief I've pointed out ways that it would be helpful. And so- But you acknowledge that those arguments weren't made below. You're just, your argument is that that's implicit in making a best evidence objection. Essentially. Okay. On the harmlessness, I would also briefly point out that in this case, it's not a slam dunk case in that it relies very heavily on the testimony of a confidential informant and a person who is a cooperator. One of the drug transactions didn't even involve, Mr. Chavez wasn't even there for the transfer of drugs that was reported to have occurred on the 25th. And so there is potential here that Mr. Chavez is being set up by other witnesses. May I ask one question? Time has expired, but you said that there was, that counsel objected to the admission of the translation, or did counsel say, if you're going to have the translation, you have to have the original also? Was it, how was the objection framed? The objection was framed, the only request was, we want to admit these translation transcripts, and his objection was, I object to that under the best evidence rule. They should hear the recording. Now, did it move past that into a discussion of, well, if we give them the recording, will we give them this? It didn't get past that, because it was under the rule, and the court said, well, this is all they're going to get. Thank you. All right, thank you very much. May I please record? Counsel? Your honors, my name is TJ Forwood. I'm an assistant United States attorney from the District of Wyoming. This case, as Mr. Vandalsen pointed out as well, too, is one where, in the research of this, you don't often hear the best evidence rule being the reason cited in these cases. Isn't that because they often present the tape? Often so, that is the case, your honor. And why didn't we present the tape here? The reason why not in this situation, your honor, is because the recordings were completely in Spanish. Well, no, they weren't, because even in the transcripts that you have, you have English language sprinkled in between the Spanish, so they weren't all in Spanish. Thank you, your honor. And there were times where a vast majority of the recordings and transactions occurred in Spanish. And is there some foreign language rule exception in the best evidence rule? I didn't see one. So, your honor, as I look at the best evidence rule, what it states is that the original should apply unless there is. Unless the rules or federal statute says otherwise. This is neither a rule nor federal statute that they're speaking in Spanish. So, the rule I believe that would apply, your honor, the specific rule would be 401, relevant evidence. Any evidence that has a tendency to make a fact more or less probable. And did government counsel argue that relevant evidence? We did not, your honor. I didn't think so. So, your honor, this is a situation where I think that rule does apply. Hearing the Spanish recording, the jury more likely than not will not be able to understand the recording. Aren't there many, if you look at the case law, aren't there many cases where despite that fact, they've admitted foreign language tapes? Your honor, at times they have. There have also been a number of circumstances in which they have not. Estrada, I think, hits that case very well. I believe it's Estrada, your honor, where they said there it is not abuse of discretion of the court to not allow the playing of that particular tape, but to have the transcription instead. Oh, okay. Let me let me stop you there. In Estrada was the tape where the tapes admitted into evidence. Yes. The court refused the tapes to allow the tapes to be played to the jury. It's not abuse. So, yeah, in Estrada, the court, even the jury, no knowledge of Spanish language, the court, so the tapes, Estrada asserted that the tapes should have been played. But the district court said they can't understand it because that language is in Spanish. Well, that implies the tapes were available. Yes, your honor. And that's a big distinction. That's the point. I mean, this is not a binary choice between play the tape, play the tapes or not play the tapes. It's a question whether the tapes are admitted in evidence. That is correct, your honor. And the United States did not admit the tapes into evidence. The United States could have. We have the tapes and the tapes available. So the defense counsel, but we did not introduce. And that follows up on a question earlier. So the tapes had been presented to defense counsel. That's your understanding. They had, your honor. And I was trial counsel. So from my own experience, I can tell you that it was. I can also tell you that in answering a question from Judge Seymour prior in volume two of the record and document 54, the government's pretrial memorandum that was filed on September 29th. So the week before trial did provide in there that we had giving the trend that we had given the translated transcripts to Mr. Bustos prior to trial. I can tell the judges from my own experiences. I know I gave it to Mr. Bustos two weeks before trial. That is not the translated transcripts or gave the recordings of the translated transcripts. You didn't get things were given to him well in advance of trial. Your honor. Okay. So you as trial counsel represent you did give him the recordings. Yes, your honor. Okay. Yeah, there's recordings all along. And that hits to the main point of this is where rule 1002 is not labeled the best evidence rule. But that's what we call. That's what it's known as the best evidence rule. So taking a step back. What is the best evidence in this particular case? Is it a Spanish recording that people will not understand or is it a translated transcript that the defense attorney prior to trial who speaks Spanish had a chance to listen review with his client? And say on the record that they were accurate. They said that the Spanish to English translation was accurate. There's plenty of inaudible in this recording and that inaudible is in the eye, you know is in the ear of the listener. And so there is not clear to me that necessarily somebody else who listened to it would have come to the same conclusion that it was inaudible. So we don't have that do we? We do not your honor. However, the point of that is we provided to Mr. Bustos who again had ample opportunity to review these transcripts and he if he disagreed or had any issue with it being inaudible. He could have stated to the United States to the court. There are sections in here that state. They are inaudible. We disagree. We can hear what they're saying. They're saying this. But the argument that was made here is being made here is by invoking the best evidence rule. He was encompassing the concerns of the best evidence rule and part of those concerns is simply are you getting something that completely gives you the story? You have a transcript here that has inaudible throughout it in places where it's sort of odd where you'll have, you know, a little bit of language over here. And then you have a lot of bit of language over here and you say wow, you surely certainly came up with a lot now in that situation. One wonders wouldn't the question would be question mark. Can I see the recordings? Listen to the recordings. So the availability seems to me to be one of the questions here. And of course, as you put knowledge, you didn't that didn't happen, right? Do you know? Did the district court have access to the recordings? The district court never reviewed to my recollection, your honor, the district court never reviewed those recordings beforehand. You didn't proffer them to do not your honor. Okay, let me let me ask you a question about trooper. And I know it'll mess up his name. But skimoni Simone, I'm sorry. Did he do the transcriptions? Who did the transcriptions in your honor? Just to make sure I'm okay. This is not a silly in the record. Can I tell you from my own experience is exactly how the transcript came about. You acknowledge it's not in the record because I didn't see that from he talked about the transcripts, but he didn't say that he actually did correct your honor. Okay. So what happened? Your honor was the United States. We hired a firm in order to conduct the translations. The firm we hire has different interpreters throughout the world that they hired to do the translations. Our initial plan was to then have those people come and testify. There were hoops with it that became very difficult. So then we had trooper Simone, who talking with another attorney in my office, I discovered had done interpretation for the United States times prior. So I had those recordings. I provide them to trooper Simone as well as the recordings and trooper Simone. He received that my estimate around is probably a month beforehand had Apple opportunity to review it. He did make a couple of corrections and parts that he thought that they stated before were inaudible. He said no, I can hear it. They're saying this those were there. He made those. He said this is accurate. I feel comfortable testifying to this. Once we had that, we provided it immediately to Mr. Bustos and those were the transcripts, the translated transcripts that we used at trial. You're all right. Thank you. And the transcripts. What did they look like? Did they say so and so says this or did they say a says this and someone else testified who a B and C were your honor? Mr. Vandal some submitted it through his exhibits in his brief under exhibits for five and six during the trial. They were identified as exhibits 15 16 and 17 kind of as I described before for your honors is there were different individuals that did this. So the form is not necessarily the same again. What I can also tell the court is that we reviewed those recordings with the code of with Mr. Solace as well as Mr. Miranda beforehand. So we knew when prior to trial so they could identify the voices saying voice a voice a is mine voice B is mine. But the exhibit that the jury was told is an accurate translation did not have the names or did have the name they did. Your honor. For example, I'm looking right here at exhibit six of Mr. Vandal some which is trial exhibit 17 V1. It has as Randolpho Labrado Chavez and V2 as Brian Solace Herrera and that was how the voices were identified. That is the exhibit that was given to the jury during the trial. Your honors. So again with the best evidence rule in many of these cases, I'm sorry. And did someone testify that voice one was so-and-so and voice two was so-and-so. Yes, your honor. They were probably authenticated under who testified to that solace. So solace solace did to the recordings for on the phone call as well as the August 3rd control by he did those the case agent. Jason Ruby did the authentication on the first one. Your honor. The only audible voice in that entire transaction was Mr. Solace's voice. The reason we did not have Mr. Solace do that. Your honor is we were not sure during trial. If we were going to submit that recording or not because it was only his voice as a trial continued. Mr. Ruby was one of our last witnesses. I thought it was appropriate to have them on there. He authenticated the voice saying that I have worked with the confidential informant a number of times. I know his voice. This is his voice on the report. Does that answer the question? I'm wondering we're talking about best evidence best evidence of what if we're talking about best evidence of what the word said mean? Seems like the best evidence is the English translation. The question is what else is in that exhibit and the only additional thing there? Is the identification of voices one and two. Is that correct? That is correct. Your honor and look in the trial transcript day two of the transcript from approximately pages of 160 to 165 is where the United States provided the foundation to admit the exhibits stating how trooper Simone said they were accurate. The defense agreed that they were accurate. Then we also talked about at that point in time. Mr. Solace had identified the voices in the two exhibits that we were admitting or that we established that he was able to authenticate those voices. It is very important to know. I think about one time your honor that the defendant never objected to that authentication as well as touched on before is the objection. Mr. Bustos made on the record was under 1002 saying that the transcripts should not be admitted. The best evidence rule requires that the recording itself be admitted. There was no contention whether the statements themselves were accurate or whether the foundation and the authentication of the voices were accurate. None of those were ever under dispute even in review of his closing arguments. Well, this kind of touches on the harmless air. The closing arguments what the defense attorney relied upon was you cannot trust what these two individuals tell you. They are cooperators. There was nothing mentioned about the accuracy or the authenticity of those recordings. So I think that does become incredibly relevant on those because the objection was merely to that recording, not to the accuracy of this. And that is what we're looking for here. What is the best evidence in this case? And the best evidence for a jury will be to see or hear something that they will understand. Let me ask you about the objection to attribution because it's one thing not to argue to the judge that the originals would be useful because the jury could see who's saying what. But was there an affirmative admission, concession that these were the speakers on the tape? Did the defense counsel, for example, ever refer to the conversation and say Mr. Salas said or think something like that? Or did they try to impeach? Did they cross-examine an attempt to impeach the witnesses who identified the voices on the tape? What I can tell you, your honor, is during the introduction of those exhibits when the 1002 objection was made, there was not an agreement like there was towards the accuracy of them. Towards we agree this is this person. We agree that this is person. He did not state that. And I'm sorry. Yeah, the place. And during the cross-examination of the witnesses, your honor, I'd have to go back and look a little bit closer. But there was not a step-by-step cross-examination of this here. It says it's your voice. But how do we know it's actually his voice? I don't know. It's not this one. That one. So there was not a there was not a tepid. Is there a challenge to the officer's knowledge of the of the voice? Mr. Salas, your honor. The objection was made again under 1002, but not necessarily to his authentication of the voices, your honor. Well, I'm talking about when when the officer testified. Yes, your honor. Okay. No, and there was no objection made specifically to that. My time is winding down. The United States believes that relevant evidence would be the rule that would be the exception under 1002. Regardless, Judge Johnson used his discretion in order to say that these translated transcriptions are the best evidence. He used his discretion appropriately and judged that those recordings would not be the best evidence. And those were. Thank you. Thank you. Any other questions? Thank you. Did you have time left? Keep it to a minute. Okay. I could see you sort of ready to pounce. So let's hear what you had to say. The notion that we're just going to admit the best evidence just because there's a colloquial name for this rule of evidence doesn't mean that you can just take it anywhere you want by saying, well, I think this is the best evidence and the trial court didn't have the discretion to do that. I would encourage you when you're considering the prejudice and considering what's going on in this case, take a hard look at government's exhibit 16. It's attached to my brief. It begins translation of 8 3 2016 recorded purchase. So it's saying to the jury, this is a recorded purchase down below. It identifies my client as one of the speakers and then it proceeds to in a fairly confused way go through and and through some process that I still don't know how it got created. Exactly. Tell the jury what's on this recording instead of giving them the recording to consider the judge. Could I ask it? My recollection is no one ever saw the exchange of drugs involving your client. Is that right? That's correct. And so in all this surveillance, you have these audio recordings, but in terms of actual visual surveillance of these trend drug transactions, there was not that there is no law enforcement officer who came in and could testify. I saw the defendant commit this crime. They are relying on the testimony of a person who's trying to get a 5k motion and a person who showed up at the office one day saying I've got this fraud conviction. I want to get rid of and I know somebody that I can sell drugs to who happened to be the co-defendant, not my client. And but Salas testified. Salas did testify that he got drug bought drugs from your client, right? And he's and he's a confidential informant who's trying to get his record cleared up, who is a drug addict and the court properly instructed the jury. You need to really take a good look at these witnesses because they have problems using pattern instructions that that are cautionary. And so am I here arguing that there's absolutely no evidence to support the conviction? No, but is it a slam dunk case? And no. And are these transcripts really important? Yes. These this is important evidence. Thank you. Thank you. Case is submitted. The counts are excused. We're going to take a brief break.